### RUTH v. NEIHEISER.

(Supreme Court, Appellate Term, First Department. May 5, 1915.)

1. BROKERS ⟨⟩64—CONTRACTS—WHAT CONSTITUTE.
   Defendant, who desired to sell a saloon business, engaged plaintiff to find a buyer. A prospective purchaser offered by plaintiff tendered a check of $25 as a deposit on the purchase price. On advice defendant refused to sign a contract for a sale of the property, which was valued at nearly $10,000, but did consent to sign a receipt for the deposit. *Held*, that the receipt did not constitute a contract obligating defendant to pay commissions, though the purchaser did not offer to consummate the transaction.

   [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 67, 97; Dec. Dig. ⟨⟩64.]

2. BROKERS ⟨⟩86—COMPENSATION—ACTION.
   In an action by a broker to recover commissions, evidence *held* insufficient to show that defendant, the seller, was guilty of any act which prevented consummation of the transaction.

   [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116–120; Dec. Dig. ⟨⟩86.]

Appeal from Municipal Court, Borough of Manhattan, Sixth District.

Action by Henry W. Ruth against Katharina Neiheiser. From a judgment for plaintiff, defendant appeals. Reversed, and complaint dismissed.

Argued March term, 1915, before LEHMAN, HENDRICK and COHALAN, JJ.

Tausch & Hamilton, of New York City (J. Franklin Tausch, of New York City, of counsel), for appellant.

David Kornblueh, of New York City, for respondent.

LEHMAN, J. The plaintiff has recovered a judgment for the sum of $500, which he claims he earned as a broker by producing a purchaser for the defendant's saloon business ready, able, and willing to buy upon terms agreed upon. The plaintiff claims that this appeal presents merely a question of fact, but it seems to me that the undisputed evidence shows that the plaintiff has no cause of action and that the judgment is erroneous.

[1] It appears from the testimony of the broker that the defendant first asked $10,000 for her business, but thereafter agreed to sell for

$7,500 and $1,200 additional for the license. She also stated that George Ehret's brewery would be willing to give a mortgage at any time. On September 30th the broker brought a customer who agreed to buy at this price. At that time the customer tendered a check of $25 as a deposit, and the defendant was asked to sign a contract; but she first consulted with a business adviser, and—

"he told us that the first payment of $25 is not enough to sign an agreement for a $8,700 place."

The broker then said to the defendant:

"That she might perhaps sign a receipt for $25, and give her receipt, simply stating that was a deposit on the $8,700 purchase price of the saloon and liquor store and the lease, and we go together again to the brewery."

A receipt was thereupon signed in the following form:

"Received twenty-five ($25) dollars as deposit on sale of business, 318 Tenth street, including a ten-years lease and a certain liquor license for the above premises for eighty-seven hundred ($8,700) dollars."

Thereafter an appointment was made between all the parties at the brewery to arrange for a loan and to consummate the proceedings. This testimony of the broker shows, in my opinion, clearly that no binding contract was intended to be made by the receipt. On the contrary, the·defendant expressly refused to make a contract upon such a small payment, and received the amount only as a deposit for a future contract.

[2] ·It follows that, if the purchaser thereafter withdrew from further negotiations, the broker has failed to make out his cause of action. Moreover, the purchaser who was produced by the plaintiff has himself testified expressly that he would not have been willing to use all his own cash for the place, and "would not buy the place without a loan." The sole question, therefore, is whether the subsequent failure to consummate the sale was due to any wrongful refusal of the defendant. It appears undisputed that on October 1st all the parties and the broker appeared at the brewery. The purchaser then asked for a loan of $6,000. George Ehret passed upon the application, and granted it, subject, however, to an examination of title. At that time there was some discussion as to the record title, which was partly vested in defendant's deceased husband; but defendant stated that under the will of her husband, not yet probated, she had a right to convey. The matter was then adjourned for one day, pending examination, and for final adjustment. On the next day the defendant and the broker appeared at the brewery, but the purchaser sent a telephone message that he was ill. The meeting was again adjourned, but the purchaser thereafter refused to proceed, and on the very day of the first meeting at the brewery stopped payment on the check. According to his testimony the reason for this was that he wished to take possession on October 1st, but the examiner of the brewery told him that the matter could not be closed that day, and if the will had to be probated it might take over a month. It appears, however, that if the purchaser had appeared on October 2d the purchaser could have been given possession, as the defendant and the brewery were apparently

willing to allow that part of the purchase money covered by the $6,000 loan to remain in escrow till the will was probated.

It seems to me that upon this evidence it clearly appears that the failure to consummate was not due to the defendant's fault. She apparently possessed all the instruments which would give her a perfect title, and could have perfected this title if given reasonable opportunity. No contract expressly fixing the time for passing of title had ever been agreed upon, and it does not appear that, if the purchaser had been willing, title could not have passed within a reasonable time.

The broker had not completely performed his duties when he produced a purchaser making the deposit, for the contract was never consummated, and the failure was not due to the defendant's wrong.

Judgment reversed, with costs, and complaint dismissed, with costs. All concur.